IN THE CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA

WILBUR MORRIS VANNATTER,

Plaintiff,

Civil Action Number: 2 | C-34
/s/PAUL T. FARRELL
Judge:_____

v.

CSX TRANSPORTATION INC.,
ROY C. KAISER, AND,
JOHN DOE, LOCOMOTIVE
OPERATOR, AND,
JOHN DOES (1-10),

Defendants,

**SUMMONS**

TO:   **Roy C. Kasier**
CSX TRANSPORTATION INC.,
935 7th Ave.
Huntington, West Virginia 25701

IN THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve

upon **D. Adrian Hoosier, II, Plaintiff's Attorney, whose address is 213 Hale Street, Suite 100,**

**Charleston, West Virginia 25301,** an Answer, including any related Counter Claim you may

have, to the Complaint filed against you in the above styled civil action, a true copy of which is

herewith delivered to you. You are required to serve your Answer within thirty (30) days after

service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgment

by default will be taken against you for the relief demanded in the Complaint and you will be

thereafter barred for asserting in another action any claim you may have which must be asserted

by counterclaim in the above- styled civil action.

Dated: _____ JAN 22 2021 _____

/s/ JEFFREY E. HOOD

Circuit Clerk

**EXHIBIT
A**

FILED

IN THE CIRCUIT COURT OF _Cabell_ COUNTY, WEST VIRGINIA

2021 JAN 22 PH 1:36

**CIVIL CASE INFORMATION STATEMENT**
(Civil Cases Other than Domestic Relations)

J.E. HOOD
CIRCUIT CLERK
CABELL CO. WV

**I. CASE STYLE:**

Case No. 21-C-34

/s/PAUL T. FARRELL

**Plaintiff(s)**

_Wilbur M. Vannatter_

Plaintiff's Phone: _____

**vs.**

**Defendant(s)**

_CSX Transportation Inc._
Name

_CT Corp. Sys. 1627 Quarrier St._
Street Address

_Charleston WV 25311_
City, State, Zip Code

Days to Answer: _30_

Type of Service: _SOS_

Defendant's Phone: _____

**II. TYPE OF CASE:**

- [x] General Civil
- [ ] Mass Litigation [As defined in T.C.R. 26.04(a)]
  - [ ] Asbestos
  - [ ] FELA Asbestos
  - [ ] Other: _____
- [ ] Habeas Corpus/Other Extraordinary Writ
- [ ] Other: _____

- [ ] Adoption
- [ ] Administrative Agency Appeal
- [ ] Civil Appeal from Magistrate Court
- [ ] Miscellaneous Civil Petition
- [ ] Mental Hygiene
- [ ] Guardianship
- [ ] Medical Malpractice

**III. JURY DEMAND:** [x] Yes [ ] No  CASE WILL BE READY FOR TRIAL BY (Month/Year): _6 / 22_

**IV. DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE SPECIAL ACCOMMODATIONS?**

- [ ] Yes [x] No

**IF YES, PLEASE SPECIFY:**

- [ ] Wheelchair accessible hearing room and other facilites
- [ ] Reader or other auxiliary aid for the visually impaired
- [ ] Interpreter or other auxiliary aid for the deaf and hard of hearing
- [ ] Spokesperson or other auxiliary aid for the speech impaired
- [ ] Foreign language interpreter-specify language: _____
- [ ] Other: _____

Attorney Name: _D. Adrian Hoosier II  # 10613_

Firm: _Hoosier Law Firm PLLC_

Address: _213 Hale St., Charleston WV 25301_

Telephone: _304-767-9482_

- [ ] Proceeding Without an Attorney

**Representing:**

- [x] Plaintiff
- [ ] Defendant
- [ ] Cross-Defendant
- [ ] Cross-Complainant
- [ ] 3rd-Party Plaintiff
- [ ] 3rd-Party Defendant

Original and _3_ copies of complaint enclosed/attached.

Dated: _1 / 22 / 21_  Signature: _____

SCA-C-100:  Civil Case Information Statement (Other than Domestic Relations)        Revision Date: 4/2020

Plaintiff: _Vanno Her_ , et al          Case Number: _21-C-34_

vs.

Defendant: _CSX Transportation Inc_, et al

## CIVIL CASE INFORMATION STATEMENT
## DEFENDANT(S) CONTINUATION PAGE

_Roy Kaiser_
**Defendant's Name**

_935 7th Ave._
**Street Address**

_Harrington WV 25701_
**City, State, Zip Code**

**Defendant's Phone:** _____

**Days to Answer:** _30_

**Type of Service:** _By Personal / Cert. Mail_

---

**Defendant's Name**

**Street Address**

**City, State, Zip Code**

**Defendant's Phone:** _____

**Days to Answer:** _____

**Type of Service:** _____

---

**Defendant's Name**

**Street Address**

**City, State, Zip Code**

**Defendant's Phone:** _____

**Days to Answer:** _____

**Type of Service:** _____

---

**Defendant's Name**

**Street Address**

**City, State, Zip Code**

**Defendant's Phone:** _____

**Days to Answer:** _____

**Type of Service:** _____

---

**Defendant's Name**

**Street Address**

**City, State, Zip Code**

**Defendant's Phone:** _____

**Days to Answer:** _____

**Type of Service:** _____

---

**Defendant's Name**

**Street Address**

**City, State, Zip Code**

**Defendant's Phone:** _____

**Days to Answer:** _____

**Type of Service:** _____

---

**Defendant's Name**

**Street Address**

**City, State, Zip Code**

**Defendant's Phone:** _____

**Days to Answer:** _____

**Type of Service:** _____

IN THE CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA

WILBUR MORRIS VANNATTER,

Plaintiff,

v.

CSX TRANSPORTATION INC.,
ROY C. KAISER, AND,
JOHN DOE, LOCOMOTIVE
OPERATOR, AND,
JOHN DOES (1-10),

Defendants.

Civil Action Number.: 21-C-__34

Judge:_____ /s/PAUL T. FARRELL

## COMPLAINT FOR DAMAGES

COME NOW Plaintiff, by counsel, and for their causes of action against Defendants, allege and state as follows:

### I.     PARTIES

1.     Wilbur Morris Vannatter, is a resident and citizen of Logan County, West Virginia. Wilbur Morris Vannatter will hereinafter be referred to a "plaintiff" throughout the remainder of this document.

2.     Defendant CSX Transportation Inc. (hereinafter "CSX") is a corporation organized under the laws of Virginia with its principal place of business in Jacksonville, Florida.  CSX does business in, owns rail lines, and operates railroad trains in the State of West Virginia and holds a certificate of authority to transact business in West Virginia.  CSX may be served with process through its Registered Agent: C T Corporation System at 1627 Quarrier St., Charleston, WV 25311-2124. CSX also operates out of Huntington, West Virginia.  CSX maintains operations out of their physical office located at 935 7th Ave., Huntington, West Virginia 25701. CSX owns and operates rails, tracks, loadouts, and its office in Huntington, Cabell County, West Virginia.  The

branch manager of CSX's Huntington, West Virginia operation is Roy C. Kaiser. Roy C. Kaiser ("Kaiser" hereinafter), is listed of the branch manager for CSX's Huntington, West Virginia location located at 935 7th Ave., Huntington, WV 25701. Kaiser is listed as both branch manager and "Railroad Line – Haul Operator. Kaiser was, upon information and belief, the responsible party for the transportation CSX train that was involved in the accident. Kaiser, upon on information and belief, resides in Huntington, Cabell County, West Virginia.

3.      Defendant, John Doe, locomotive operator, is upon information and belief an employee, agent or contractor of Defendant CSX who was operating the subject locomotive that struck Plaintiff and caused harm. Defendant John Doe, locomotive operator, upon information and belief resides in Cabell County, West Virginia. Defendant John Doe, locomotive operator, is not known to Plaintiff. Plaintiff cannot identify the correct name of "John Doe, locomotive operator" as there are not available reports identifying John Doe, locomotive operator's true name.

4.      Defendants John Does (1-10) are unknown employees, agents, or contractors employed or contracted by CSX and maybe liable for plaintiff's injuries herein.

5.      At all times pertinent hereto, all employees of the CSX were acting as agents of CSX, within the scope of their employment and authority, and in the furtherance of the business of CSX. All the acts and omissions of the employees of the CSX are imputed to their employer, who is liable for such acts and omissions.

## II.      JURISDICTION AND VENUE

6.      Jurisdiction is proper in this Court, in that Plaintiffs' causes of action arose out of CSX transacting business in West Virginia, owning and using real estate in West Virginia, and committing tortuous acts within West Virginia.

2

7.  Venue is proper in this Court in that Plaintiffs causes of action arose in West Virginia.

8.  All of the allegations contained hereto related to CSX are based upon and should be interpreted as State law causes of action seeking damages for permanent, severe and catastrophic injury, based upon West Virginia law.

9.  Jurisdiction is vested in this Court by W.Va. Code 56-1-1 et seq.

10.  Pursuant to W.Va. Code 56-1-1 et seq, this Court constitutes the proper venue on the basis that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, Defendants are located in this district, and Defendants maintain operations in this district.

11.  All allegations herein related to CSX are based upon and should be interpreted to state causes of action seeking damages under state law for personal injury or property damage, based upon one or more of the following:

A.  CSX has failed to comply with the Federal standard of care established by regulations or orders issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of 49 U.S.C. § 20106;

B.  CSX has failed to comply with its own plans, rules, or standards that it created pursuant to a regulation or order issued by either of the Secretaries; or

C.  CSX has failed to comply with State laws, regulations, and orders that are not incompatible with subsection (a)(2) of 49 U.S.C. § 20106.

12.  All allegations set forth in this Complaint are based upon information and belief.

13.  All allegations set forth in each of the paragraphs in this Complaint are incorporated

COMPLAINT FOR DAMAGES

by reference into each of the other sections and paragraphs contained in this Complaint, as if fully set forth therein.

## III.    FACT BACKGROUND AND ALLEGATIONS

14.    The following paragraphs of the Complaint are made upon information and belief.

15.    On or about February 5, 2019, at the time of the incident giving rise to this litigation, Plaintiff was 35 years old and living in a home located at 53 Locust Street, in McConnell, West Virginia, in Logan County.

16.    CSX tracks run in a generally north and south direction at the Incident Site.

17.    The home that Plaintiff and his family were occupying abuts the CSX's right of way, and the back of the home is less than 50 feet west of the CSX's tracks.

18.    The incident occurred on CSX's tracks, in between the crossings on McConnell road.

19.    The incident site and the property line between CSX right-of-way and Plaintiff's and other's home is completely unprotected by any barriers, such as fences to prevent pedestrians or pets from entering the railroad right-of-way.

20.    There are well-beaten paths and trails running alongside CSX's tracks, both on and abutting CSX's right of way, near and at the Incident Site.

21.    CSX is aware that the paths and trails running along and on its right of way is regularly accessed and used by pedestrians, motorists, users of recreational vehicles, and residents exercising their pets.

22.    In the early evening of February 5, 2019, Plaintiff was on the deck of his home with his dog. Plaintiff's dog got off its leash and ran towards CSX's unfenced track. While Plaintiff was trying to retrieve his dog, he tripped and struck his head on or near CSX's tracks. After

4

striking his head, Plaintiff was either unconscious or his conscious was altered.

23.     Shortly after, a CSX train was travelling in a northbound direction and was approaching Plaintiff, who was laying on/near the tracks after having struck his head.

24.     The CSX train was travelling at approximately 11-13 miles per hour when it crossed the first McConnell road crossing and came within vision range of Plaintiff.

25.     The CSX train crew saw Plaintiff on the CSX railroad tracks but failed to timely apply braking.  As a result, the train violently struck Plaintiff and drug him along the tracks.

26.     First responders arrived and found Plaintiff underneath the CSX train near the McConnell road crossing.

27.     Plaintiff survived the incident, but suffered severe injuries including the amputation of both of his legs above the knee.

## IV.     CAUSES OF ACTION
## COUNT 1 - GENERAL LIABILITY

28.     Plaintiffs hereby incorporate by reference paragraphs 1-27 as if fully set forth herein.

29.     Defendants, their agents and employees, had and have a duty to exercise reasonable care to avoid needlessly endangering members of the public.  In this case Defendants breached their duty by failing to exercise reasonable care.  As a direct and proximate result of the Defendants' breach of this duty, Plaintiffs suffered damages, as hereafter alleged.  All acts or omissions of the Defendants constitute negligence, gross negligence, willful and wanton conduct, recklessness, intentional conduct, and demonstrate a reckless and intentional disregard for the safety of the public, including specifically the Plaintiff.

5

COMPLAINT FOR DAMAGES

30.    When the Plaintiff encountered the unsafe, dangerous and defective conditions, the Defendants had actual or constructive notice of the existence of the aforementioned unsafe, dangerous and defective conditions and the negligent hiring and discharge of mandatory and/or non-delegable duties, and failed to prevent Plaintiff from being seriously injured at the incident site by fixing or protecting against the herein described unsafe, dangerous and defective conditions.

## COUNT 2

### NEGLIGENCE AND NEGLIGENCE PER SE REGARDING CSX's TRAIN OPERATIONS

31.    Plaintiffs hereby incorporate by reference paragraphs 1-28 as if fully set forth herein.

32.    CSX as the owner of the tracks and the operator of the train involved in this Incident, had a duty to keep a proper lookout, operate the train safely for the then existing conditions, and prepared to slow or stop for any hazards.

33.    CSX had actual and/or constructive notice of the dangerous and defective conditions on CSX's tracks and right of way at this Incident Site.

34.    The Defendant must use reasonable care not to harm members of the public, including Plaintiff.

35.    CSX Rules require, among other things, that in cases of doubt or uncertainty to immediately apply the emergency brakes to protect life or property.

36.    The Incident described in this Complaint is a direct and proximate result of CSX's negligence, gross negligence, reckless disregard, and/or willful and wanton actions or omissions in:

A.    Failing to keep a proper lookout;

B.    Failing to timely apply braking and immediately apply the emergency

6

brakes when the train crew knew or should have known that Plaintiff was in a position of peril;

C.      Failing to provide sufficient audible warnings in compliance with 49 C.F.R. § 229.129, state law, railroad operating rules, and industry standards;

D.      In failing to use an emergency horn sequence to providing warning to Plaintiff.;

E.      Failing to provide sufficient visual warnings in compliance with 49 C.F.R. § 229.125, state law, railroad operating rules, and industry standards;

F.      Failing to slow or stop the train to avoid "a specific, individual hazard" prior to the Incident and/or failing to approach the Incident site prepared to stop due to "an essentially local safety hazard;"

G.      Failing to have the CSX train under proper control;

H.      Failing to adequately manage, instruct, train, and test members of the operating department in the safe operation of its trains; and

I.      Failing to report unsafe conditions and dissuading documentation of those conditions;

J.      In failing to instruct train crews and other employees how to identify essentially local safety hazards, failing to take any reasonable steps to reduce essentially local safety hazards, and failing to warn of their existence;

K.      In failing to instruct its train crews on the appropriate circumstances under which they should be prepared to brake, slow, or stop the train for essentially local safety hazards; and

L.      By condoning its employees' failures to modify train operations to account

7

for hazards at or near the Incident Site.

37.     CSX was otherwise careless and negligent and/or grossly negligent as such facts are discovered during discovery in this litigation.

38.     Plaintiffs are not making any claim for excessive speed based on "a specific individual hazard" or "an essentially local safety hazard."   The claims based on "a specific individual hazard" and "an essentially local safety hazard" should not be interpreted as anything but the failure to, or the failure to be prepared to, slow the train, apply the brakes, or stop the train.

39.     As a direct and proximate result of CSX's wrongful conduct as alleged herein, Plaintiffs suffered damages, as alleged in Section V of this Complaint.

## COUNT 3

### NEGLIGENCE AND NEGLIGENCE PER SE REGARDING CSX's PREMISES LIABILITY AND DANGEROUS CONDITION OF PROPERTY

40.     Plaintiffs hereby incorporate by reference paragraphs 1-39 as if fully set forth herein.

41.     CSX is responsible for inspecting, maintaining and repairing the railroad right-of-way where this Incident occurred to ensure it is in a safe and proper condition for its train crews and the general public.

42.     CSX knows or has reason to know that its railroad tracks and operations are an attractive nuisance and children that not able to appreciate the risks of the CSX tracks and railroad operations may enter CSX's right of way and traverse or walk upon CSX's tracks.

43.     The Incident described in this Complaint is a direct and proximate result of CSX's negligence, gross negligence, negligence per se, reckless disregard, and/or willful and wanton actions or omissions in:

A.     Failing to restrict access to its right of way in a reasonably safe manner by

8

COMPLAINT FOR DAMAGES

erecting and maintaining an adequate barrier or fence to keep pedestrians in general, and children in specific, from accessing CSX's right of way and tracks, and walking upon or over the railroad tracks at the Incident Site;

B.      Failing to keep its property in a safe condition;

C.      Failing to comply with safety regulations, railroad rules, and industry standards for the pedestrian safety;

D.      Failing to properly identify, document, report, or repair the hazardous conditions on its right of way where this Incident occurred;

E.      Failing to slow order this section of track for the unsafe conditions along the CSX track and right of way until the unsafe conditions were remediated;

F.      Failing to properly inspect the rail track and right of way of the Incident Site pursuant to federal regulations, 49 C.F.R. Part 213, state law, CSX's own rules created pursuant to such regulations, and industry standards;

G.      At the time of this incident the conditions along the CSX track and right of way created "an essentially local safety hazard." CSX was negligent in failing to recognize essentially local safety hazards, failing to instruct train crews and other employees how to identify essentially local safety hazards, failed to take any reasonable steps to reduce essentially local safety hazards, and failed to warn of their existence. Accordingly, the train crew did nothing to slow the train, prepare to slow the train or otherwise account for the local safety hazard. The existence of an unidentified and unaccounted for local safety hazard was one of the contributing factors that caused this Incident.

44.     CSX was otherwise careless and negligent and/or grossly negligent as such facts are discovered during discovery in this litigation.

COMPLAINT FOR DAMAGES

45.     CSX, as the owner of the railroad track and right-of-way where this Incident occurred, had and have a duty to exercise ordinary and reasonable care to avoid needlessly endangering members of the public. In this case, CSX breached its duty by failing to exercise reasonable care. As a direct and proximate result of CSX's breach of this duty, Plaintiff was seriously injured. All acts or omissions of CSX and its agents and employees constitute negligence and disregard for the safety of the pedestrian public, such as Plaintiff.

46.     CSX and its agents and employees had and have a duty to anticipate the presence of pedestrians at the Incident Site since CSX knew or should have known for an extensively long period of time that the pedestrian public, motorist, and other users frequently accessed and used CSX right of way at this Incident Site. It is also common railroad industry knowledge that pedestrians frequently access railroad right-of-way at specific locations or pedestrian "hot spots." By failing to erect any barriers or fencing to prevent usage of the right of way, CSX impliedly assented to such use.

47.     As a direct and proximate result of CSX's wrongful conduct as alleged herein, Plaintiffs suffered damages, as alleged in Section V of this Complaint.

## COUNT 5

## FAILURE TO WORK WITH LOCAL COMMUNITY

48.     Plaintiffs hereby incorporate by reference paragraphs 1-47 as if fully set forth herein.

49.     CSX, and its agents and employees, have and had a duty to exercise reasonable care in the maintenance of their respective properties so as to not needlessly endanger members of the pedestrian public. CSX also had a duty of reasonable care in operation of their trains and tracks which run through public communities so as to not needlessly endanger members of the pedestrian

10

COMPLAINT FOR DAMAGES

public, including children.

50.     Part of these duties include cooperating with the local community to educate and inform the local community of the present and future dangers that CSX's train operations and railroad tracks create, and the measures that can be taken to reduce or eliminate such dangers.

51.     CSX, and its agents and employees, are in a superior position of knowledge over the local community regarding the operation of trains through the local community and the known dangers presented by the operation of trains through communities.

52.     CSX, and the railroad industry generally, have touted about the amount of time they take in trying to ensure the public is not placed in danger by railroad operations. The railroad industry, including CSX, have voluntarily undertaken the duty to inform the public of present and future dangers railroad operations create. The Federal Railroad Administration ("FRA")-the U.S. government agency owned/headed by the citizens of the United States and charged by the citizens of the United States to regulate and enforce railroad safety-has documented the railroad industry's commitment to community and that it is the industry custom, standard, and duty for railroad industry members, such as CSX, to approach all communities in which railroads operate to educate and inform the community of the present and future dangers railroad trains present, as well as the measures that can be taken to reduce or eliminate such dangers.

53.     CSX, and its agents and employees, have failed to use reasonable care by disregarding the custom, standard, and duty to communicate with the local community and road authorities in the Cities of Logan and McConnell and in Logan County, West Virginia, to discuss reasonable barriers of fencing to prevent pedestrians in general and children in specific from accessing CSX tracks and right of way.

54.     The above listed failures and the breach of the custom, standard, and duty to

11

cooperate with the local community on the part of CSX, and its agents and employees, constituted negligence and were a direct and proximate cause of the railroad train striking Plaintiff and a direct and proximate cause of his serious injuries.

## COUNT 6

### GROSS NEGLIGENCE AND TOTAL DISREGARD FOR PUBLIC SAFETY

55.     Plaintiffs hereby incorporate by reference paragraphs 1-54 as if fully set forth herein.

56.     CSX customs, policies and conduct in all of the aforementioned allegations were willful and wanton, and demonstrated a reckless disregard for the safety of the public.

57.     For over a decade, Defendants have elected to disregard legal duties owed to the pedestrians in and around Logan County.

58.     CSX has demonstrated a pattern of conduct by failing to enforce its own policies and procedures as well as federal and state laws providing for the safe operation of trains through communities in Logan County.  This pattern of conduct has condoned and ratified the conduct of its employees and agents to disregard duties owed to the members of the public, including pedestrians and pedestrian children.  CSX reported a gross profit of over $8 Billion in 2018. Despite these extremely large yearly profits, CSX has done nothing with respect to engineering improvements for pedestrian safety in Logan County.

59.     Instead, CSX has made a deliberate decision that it will be cheaper to pay compensatory damages for claims resulting from injuries to the pedestrians than to spend any capital on trying to reduce the risks that it has created to members of the public by installing public safety fencing or barriers.  CSX knows that pedestrians enter its right-of-way in general and in the vicinity of the Incident Site in specific.  CSX's conduct as set forth herein constitutes malice.

COMPLAINT FOR DAMAGES

## COUNT 7

### NEGLIGENCE THEORY
### Negligent Hiring and Retention
### (Roy C. Kaiser, John Doe, locomotive operator, and John Does (1-10))

60.     Plaintiffs hereby incorporate by reference paragraphs 1-59 as if fully set forth herein.

61.     West      Virginia      has      recognized      a      cause      of      action      based
upon negligent hiring and retention. *See State ex rel. West Virginia State Police v. Taylor*, 201
W.Va. 554, 499 S.E.2d 283, 289 n. 7 (1997); *McCormick v. W. Va. Dep't of Public Safety*, 202
W.Va. 189, 503 S.E.2d 502, 506–07 (1998) (per curiam).

62.     The  test  for  determining  whether  an  employer negligently hired and  retained  an
employee is as follows:

> When the employee was hired or retained, did the employer
> conduct a reasonable investigation into the employee's
> background vis a vis the job for which the employee
> was hired and the possible risk of harm or injury to co-
> workers or third parties that could result from the conduct of
> an unfit employee? Should the employer have reasonably
> foreseen the risk caused by hiring or retaining an unfit
> person?

*McCormick*, 503 S.E.2d at 506.

63.     The court must also consider "the nature of the employee's job assignment, duties and
responsibilities." *McCormick v. W. Va. Dep't of Public Safety*, 202 W.Va. 189, 503 S.E.2d 502,
507 (1998) (per curiam). The duty with respect to hiring and retention increases "as the risks to
third persons associated with a particular job increase." *Id.* at 507. *Woods v. Town of Danville,
W.V.*, 712 F. Supp. 2d 502, 514 (S.D.W. Va. 2010)

13

COMPLAINT FOR DAMAGES

64.     CSX and Kaiser were negligent in hiring and retention of John Doe, locomotive operator, and/or John Does (1-10).  Likewise, CSX was negligent in the hiring and retention of Kaiser, John Doe, locomotive operator, and/or John Does (1-10) and/or John Does (1-10) was negligent in hiring and retention of John Doe, locomotive operator, and John Does (1-10).  CSX was negligent in hiring Kaiser, John Doe, locomotive operator, and John Does (1-10) as the referenced parties did not have the training, experience to ensure a train accident wouldn't occur.  CSX hired or retained, Kaiser, John Doe, locomotive operator, and/or John Does (1-10) without out completing a reasonable investigation into the employee's background vis a vis the job for which the employee (Kaiser, John Doe, locomotive operator, and/or John Does (1-10)) was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee.  Kaiser hired or retained, John Doe, locomotive operator, and/or John Does (1-10) without out completing a reasonable investigation into the employee's background vis a vis the job for which the employee (John Doe, locomotive operator, and/or John Does (1-10)) was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit/untrailed/on negligently hired/retained employee John Does (1-10) hired or retained, John Doe, locomotive operator, and/or other John Does (1-10) without out completing a reasonable investigation into the employee's background vis a vis the job for which the employee (John Doe, locomotive operator, and/or John Does (1-10)) was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit/untrailed/on negligently hired/retained employee.  CXS as the employer should have reasonably foreseen the risk caused by hiring or retaining Kaiser, John Doe, locomotive operator, and/or John Does (1-10).  Kaiser as the managing employer should

14

have reasonably foreseen the risk caused by hiring or retaining John Doe, locomotive operator, and/or John Does (1-10).  John Does (1-10) should have reasonably foreseen the risk caused by hiring or retaining Kaiser, John Doe, locomotive operator, and/or other John Does (1-10).

65.     Had Defendant CSX not been negligent it would have realized that Kaiser, John Doe, locomotive operator, and/or other John Does (1-10) were not following policy and failing to ensure the safety of others, and by failing to properly complete a proper investigation as to the hiring and retention of Kaiser, John Doe, locomotive operator, and/or John Does (1-10), and otherwise failing to provide training to Kaiser, John Doe, locomotive operator, and/or John Does (1-10), the incident could have been prevented.  Had Defendant Kaiser not been negligent he would have realized that John Doe, locomotive operator, and/or other John Does (1-10) were not following policy and failing to ensure the safety of others, and by failing to properly complete a proper investigation as to the hiring and retention of John Doe, locomotive operator, and/or John Does (1-10), and otherwise failing to provide training John Doe, locomotive operator, and/or John Does (1-10), the incident could have been prevented.     Had Defendant John Does (1-10) not been negligent they would have realized that John Doe, locomotive operator, and/or other John Does (1-10) were not following policy and failing to ensure the safety of others, and by failing to properly complete a proper investigation as to the hiring and retention of John Doe, locomotive operator, and/or John Does (1-10), and otherwise failing to provide training John Doe, locomotive operator, and/or John Does (1-10), the incident could have been prevented.     CSX did hire and retain Kaiser, John Doe, locomotive operator, and/or John Does (1-10).

66.     As stated above CSX and/or Kaiser and/or John Doe, locomotive operator, and/or John/Does (1-10) did place Plaintiff in danger by acting negligent in hiring and/or retention of Kaiser, John Doe, locomotive operator, and/or John Does (1-10).

15

COMPLAINT FOR DAMAGES

67.     CSX knew or should have known, and/or reasonably foreseen, the potential harm of allowing an unqualified supervisors or employees to have oversight of the operations of a train, oversight of the training to employees, and failing to train employee to follow procedures. Plaintiff please that this incident is not the first incident where CSX, Kaiser, John Doe, locomotive operator, and/or John Does (1-10) failed to follow procedure, violated safety regulations, failed to come to a stop property, and otherwise failed to act in a matter that would be safe for the general public, including plaintiff. The negligent hiring and retention of Kaiser, John Doe, locomotive operator, and/or John Does (1-10) by CXS did cause this Plaintiff harm. The negligent hiring and retention of John Doe, locomotive operator, and/or John Does (1-10) by Kaiser did cause this Plaintiff harm. The negligent hiring and retention of John Doe, locomotive operator, and/or John Does (1-10) by Kaiser, CSX, or John Does (1-10) did cause this Plaintiff harm. The negligent hiring and retention of John Doe 1-10 of, John Doe, locomotive operator, and/or John Does (1-10) by CXS, Kaiser, other John Does (1-10) and/or John Doe, locomotive operator, did cause this Plaintiff harm.

68.     As a direct and proximate result of Defendants negligent hiring and retention of the named Defendants, Defendants did act in a negligent manner, failed to follow policy, did fail to comply with safety regulations, etc.

69.     CSX and other Defendants had a duty to both its employees and the general public to hire and retain a competent supervisor or other employees/agents/contractors who met the requirements for the job. CSX and other Defendants breached said duty by negligently hiring and retaining the individuals identified in Paragraph 66-67 of this Compliant who wasn't fit, qualified, or trained for their position. But for the negligence of CSX in hiring and retaining the individuals identified in Paragraph 66-67 of this Compliant, plaintiff would not have been harmed. Said breach did cause Plaintiff harm and does entitle Plaintiff to damages as set forth below.

16

COMPLAINT FOR DAMAGES

## COUNT 8

## SPOLIATION OF EVIDENCE /NEGLIGENT MAINTENANCE OF VIDEO

70.     Plaintiffs hereby incorporate by reference paragraphs 1-69 as if fully set forth herein.

Plaintiff herein pleas "Spoliation of Evidence" and/or Negligent Maintenance of Video

71.     CSX is guilty of some act or omission in violation of a duty owed to the plaintiff. Syllabus

Point 1, *Parsley v. General Motors Acceptance Corp.,* 167 W.Va. 866, 280 S.E.2d 703 (1981).

Herein, CSX did have a required video recorder on the train that collided with Plaintiff causing his

injuries. The video is incomplete and errors out prior to the collision. The video recording device

was in the exclusive control of the Defendants.

72.     Defendant CSX did know there was a probability of a claim or lawsuit that would be

filed herein as early as April 2019 when undersigned attorney D. Adrian Hoosier, II, sent a letter

to CSX and/or its counsel putting defendant on notice of this claim.

73.     Defendant CSX allowed undersigned attorney D. Adrian Hoosier, II, to view the video

of the incident. The video was incomplete. The recording erred prior to the collision. Therefore,

it was impossible to see the collision. However, the video came back into view when the

emergency medical professionals were at the location of the accident. Such, the video was working

prior to the collision and after the collision, just not during the collision.

74.     Defendants have a duty to preserve evidence and maintain evidence that is likely to be

used in a claim or litigation which, in this case, had been requested by counsel only a few weeks

after the accident.

75.     Defendants breached that duty by failing to preserve the evidence, allowing it to become

unusable, editing the video, or in other ways failing to insure the video of the incident was able to

be viewed.

COMPLAINT FOR DAMAGES

76.     Defendants breached cause Plaintiff harm as Plaintiff is unable to view the incident in whole, and the error occurs just before the impact preventing Plaintiff from being able to view the impact causing harm.

77.     Defendants have caused the Plaintiff harm as Plaintiff is unable to review the video, have it examined by experts, or present the same in Plaintiff's case in chief.

## V.     DAMAGES

78.     That as a direct and proximate result of the foregoing, CSX has caused serious permanent and catastrophic injuries to Plaintiff, including the amputation of both of his legs above the knee joints, significant pain and suffering and medical expenses in both the past in the future, and lost earning capacity.  Plaintiff seeks all damages consistent with West Virginia law.  Such damages far exceed $75,000.   Further, Plaintiffs seeks a trial by jury.

WILBUR MORRIS VANNATTER,
By Counsel,

D. Adrian Hoosier, II
West Virginia State Bar Identification # 10013
HOOSIER LAW FIRM, PLLC
213 Hale Street, Suite 100
Charleston, West Virginia  25301
T: (681) 215-0642
F: (681) 245-6192

18

COMPLAINT FOR DAMAGES

/s/ Joseph Sayler
Joseph Sayler, Admitted Minnesota and North Dakota, *Pro Hace Vice*, pending
Sara Nachtman, Admitted Minnesota, *Pro Hace Vice,* pending
BOLT HOFFER BOYD LAW FIRM
2150 Third Ave., North
Suite 350
Anoka, MN  55303
T: (763) 406-7000
F: (763) 208-3607

19